*Matter of Gorelick v Governor's Off. of Empl. Relations, supra,* at 859).

Nor do we disagree with Supreme Court's finding that issues involving recreational duties and training alleged in the petition were not "actually raised" in the grievance proceeding and therefore not subject to judicial review (*see,* CPLR 7801 [1]; *Matter of Roggemann v Bane,* 223 AD2d 854, 856).

Likewise, petitioner's claim that GOER's apparent failure to explain its inconsistent August 22, 1996 decision in a grievance based on similar claims of out-of-title work renders GOER's April 10, 1998 determination in this case arbitrary and capricious (*see, Matter of Martin [Troy Publ. Co.—Roberts],* 70 NY2d 679, 681; *Matter of Collins v Governor's Off. of Empl. Relations,* 211 AD2d 1001) is also not properly before us since it "was not raised before the appropriate administrative bodies and is therefore not preserved for our review" (*Matter of Henry v Wetzler,* 82 NY2d 859, 862, *cert denied* 511 US 1126; *see, Matter of Scotsmen Press v State of New York Tax Appeals Tribunal,* 165 AD2d 630, 634). Notwithstanding Supreme Court's consideration of this issue, such a claim must be first made at the administrative level and cannot be raised for the first time on judicial review of the administrative determination (*see, Matter of Rauer v State Univ. of N. Y.,* 159 AD2d 835).

We have reviewed petitioner's remaining contentions and find them to be without merit.

Cardona, P. J., Carpinello, Graffeo and Mugglin, JJ., concur. Ordered that the judgment is affirmed, without costs.

■ IRENE EDMONDS et al., Respondents, v JOSEPH L. QUELLMAN et al., Defendants, and NORTH COUNTRY VASCULAR DIAGNOSTICS, INC., Appellant. [715 NYS2d 768] —Carpinello, J. Appeal from an order of the Supreme Court (Dier, J.), entered June 24, 1999 in Warren County, which, *inter alia,* denied a motion by defendant North Country Vascular Diagnostics, Inc. for summary judgment dismissing the complaint against it.

On February 15, 1994, George Edmonds was examined by defendant Joseph L. Quellman, an orthopedic surgeon, who recommended that Edmonds undergo knee replacement surgery. At that time, Quellman's physical examination of Edmonds revealed a near total occlusion of the arteries in his right leg, that is, Quellman was unable to palpate Edmonds' foot pulses. To confirm this clinical finding, Quellman ordered noninvasive diagnostic tests which were performed by defendant North Country Vascular Diagnostics, Inc. on April 14,

1994. The test results indeed confirmed that Edmonds had a significant occlusion of the femoral artery. The recommended knee replacement surgery was performed by Quellman on April 26, 1994. Four days later, Edmonds was diagnosed with compartment syndrome of the leg—a condition by which tissue pressures increase with resultant muscle damage—as a consequence of the surgery. In this medical malpractice action against, among others, Quellman and North Country, plaintiffs allege that Edmonds was not a proper candidate for knee replacement surgery because of his arterial occlusion. They further allege that as a result of the compartment syndrome and other related postoperative complications, Edmonds was forced to undergo an above-the-knee amputation of the right leg on August 12, 1994 and died from acute pulmonary emboli six days later.

At issue on appeal is the limited question of the liability, if any, of North Country for Edmonds' injuries and death. Specifically, plaintiffs claim that there is a question of fact as to whether North Country timely communicated the results of Edmonds' arterial tests to Quellman before he performed the surgery, a contention with which Supreme Court agreed in its denial of North Country's motion for summary judgment. Even if we were to assume that such a claimed question of fact were material to the legal question of whether North Country could be liable for damages in this malpractice and wrongful death action for failing to timely communicate the results of the tests (which we do not), a review of the record reveals that no such factual question actually exists. Accordingly, North Country's motion for summary judgment should have been granted.

At his November 16, 1998 examination before trial, Quellman clearly testified that he received the results of the arterial tests from North Country *before* he performed surgery on Edmonds. In an effort to counter this direct testimony, plaintiffs point to an earlier deposition of North Country's medical director in which he described a July 1996 telephone conversation with Quellman in which the latter allegedly claimed that he had *not* received the report prior to the surgery. We do not agree with plaintiffs' contention that this hearsay version of a prior inconsistent statement creates a question of fact since the substance of the telephone conversation was unequivocally contradicted by Quellman's subsequent sworn testimony. When confronted at his own deposition with the alleged July 1996 telephone conversation, Quellman testified that he did not recall having the conversation. While we recognize that a prior inconsistent hearsay statement may, under certain circum-

stances, raise an issue of fact sufficient to defeat summary judgment (*see, Egleston v Kalamarides*, 58 NY2d 682, 684), those circumstances are not present here. When a witness testifies under oath that he or she cannot recollect a particular fact, his or her prior statement as to that fact is inadmissible as a prior inconsistent statement (*see, Varela v Previti*, 64 AD2d 560, 561).

In any event, even if this Court were to conclude that the hearsay statement is admissible and indeed creates a question of fact as to whether the test results were timely communicated to Quellman, summary judgment in favor of North Country is nevertheless appropriate. Whether Quellman did or did not receive the test results prior to surgery is not material to the question of whether North Country can have any legal liability for Edmonds' injuries and death. Quellman already knew of the arterial occlusion before he ordered the tests and his decision to proceed with the surgery was not dependant on their results. Even if Quellman had not received the results of the tests prior to surgery, the decision to proceed in the absence of same was his alone to make. As North Country aptly points out, any clerical error of failing to timely mail the test results could have been easily remedied by a telephone call from Quellman requesting an additional copy or a verbal confirmation of their results. Said differently, the claimed failure to timely mail or communicate the test results was not a proximate cause of the alleged malpractice and wrongful death. No act of North Country caused the surgeon to proceed with an allegedly contraindicated surgery (*see, Sheehan v City of New York*, 40 NY2d 496, 503). To hold differently would expose all diagnostic facilities which commit clerical errors in the forwarding of test results to potential legal liability when a physician independently decides to proceed with surgery despite his or her lack of presumably relevant information.

As a final matter, we reject plaintiffs' contention that the issue of proximate cause is not properly before this Court. Of note, North Country's medical director averred that its *only* role in the care and treatment of Edmonds was to perform studies on the circulatory status of Edmonds' legs. He specifically averred that "[a]t no time was [he] or anyone at North Country * * * requested by * * * Quellman, or anyone else, to determine or render any opinion as to whether * * * Edmonds was an appropriate surgical candidate." He further noted that had Quellman not received the test results in the mail prior to surgery, he could have contacted North Country for an additional faxed copy or even a verbal report. In our view, these

factual averments most decidedly raised the issue of proximate cause before Supreme Court.

Mercure, J. P., Peters, Spain and Graffeo, JJ., concur. Ordered that the order is modified, on the law, with costs to defendant North Country Vascular Diagnostics, Inc., by reversing so much thereof as denied the motion by defendant North Country Vascular Diagnostics, Inc.; motion granted, summary judgment awarded to said defendant and complaint and all cross claims dismissed against it; and, as so modified, affirmed.